[No. 11673.   In Bank. — December 26, 1888.]

# WILLIAM SILVARER, APPELLANT, *v.* LAWRENCE HANSEN ET AL., RESPONDENTS.

STATUTE OF LIMITATIONS — ADVERSE POSSESSION — COLOR OF TITLE. — When one claiming as grantee of an invalid tax title remains in the actual and exclusive possession of a tract of land occupied under an inclosure as one farm, and takes a contract of purchase and conveyance from the owner of a part thereof, which is not separated from the remaining part by any fence, and continues to occupy the whole tract under a claim of title in himself, exclusive of any other right, and thereafter conveys each part of said farm by separate deeds to another, who takes possession and occupies the whole as one farm, adversely to all other claimants of title, the deeds under which the latter and his grantors claim are sufficient color of title to make his possession adverse to all other claimants of part of the farm.

ID. — IGNORANCE OF ADVERSE RIGHTS. — The fact that a person in exclusive possession of a tract of land claiming title thereto does not suppose that he is interfering with the rights of any one else, does not defeat his adverse possession, but tends to establish more strongly the good faith and exclusiveness of his own claim.

ID. — EVIDENCE. — The testimony of witnesses who have had personal observation of the sufficiency of a fence to keep out stock is admissible to prove that it so operated. Such testimony is not matter of opinion.

AGREED BOUNDARY — PARTITION FENCE. — When the boundary between adjoining owners is conflicting, uncertain, and indefinite, and a boundary is agreed upon between them, and a partition fence is erected and maintained thereon, such agreement is valid, and a purchaser from one of the adjoining owners, with notice of such agreed boundary, is bound thereby.

EVIDENCE OF ADJOINING OWNER'S CLAIM. — PRESUMPTIVE OWNERSHIP. — A contract of purchase and conveyance to a possessor of land, from one

who is the presumptive owner thereof, under a decree of partition deter-
mining title in his favor, is, together with such decree, admissible to
show the extent and nature of his claim, and to constitute him an adjoin-
ing owner, within the meaning of the authorities upon agreed boundary
lines.

ID. — BOUNDARY AGREED WITHOUT DISPUTE. — When the lines of two ad-
joining owners overlap, and the conflict is one which cannot be deter-
mined without judicial investigation, the parties may adjust the boun-
daries between themselves, and it is not necessary in such case that there
shall be an actual dispute as a basis for an agreed boundary line.

APPEAL — ERROR WITHOUT PREJUDICE. — The admission of erroneous evi-
dence is harmless, when there is abundance of other evidence, without
substantial conflict, to sustain the finding of fact which such evidence
tends to prove.

ID. — PRESUMPTION. — The presumption is in favor of the correctness of the
finding of the court below; it is for the appellant to show error.

PLEADING — MOTION TO STRIKE OUT — WAIVER. — When a case is tried with-
out any motion to strike out certain denials in the answer, and after
judgment upon such trial is reversed upon appeal, no motion to strike
out is made for a series of years after the *remittitur* is filed, until just
before the commencement of the second trial, the delay operates as a
waiver, and a motion to strike out comes too late to be regarded.

EVIDENCE — CROSS-EXAMINATION — DISCRETION. — The cross-examination of
witnesses is largely in the discretion of the trial court, and will not be
reviewed, if there is no abuse of discretion.

APPEAL from a judgment of the Superior Court of
Santa Cruz County, and from an order denying a new
trial.

The facts are sufficiently stated in the opinion of the
court, save that it appeared that Dunlap entered into
possession as the grantee of an invalid tax title.

*Charles B. Younger,* for Appellant.

The proceedings in the partition suit did not invest
Patterson with any new or additional title. (*Wade* v.
*Deray,* 50 Cal. 376.) In order to render effectual a ver-
bal agreement establishing a boundary line between
adjoining lands, it must appear, not only that there is a
doubt or uncertainty as to the line, but each party must
have the title to and right to dispose of the tract of land
claimed by him, or in other words, the contracting par-

ties must be coterminous proprietors. (*Carpentier* v. *Thirston*, 24 Cal. 268; *Crowell* v. *Maughs*, 2 Gilm. 419; 43 Am. Dec. 62; *Terry* v. *Chandler*, 16 N. Y. 354; 59 Am. Dec. 707; *Vosburgh* v. *Teator*, 32 N. Y. 561; *Lennox* v. *Hendricks*, 11 Or. 33; *Watkins* v. *Devlin*, 2 Ohio St. 593.) In all cases where the true boundary is known to the proprietors of coterminous lands, and for mutual convenience or other sufficient reasons, they make a verbal agreement changing the location of such boundary, the statute of frauds inflexibly applies and avoids such agreement. (*Lennox* v. *Hendricks*, 11 Or. 33; *Vosburgh* v. *Teator*, 32 N. Y. 561; *Terry* v. *Chandler*, 16 N. Y. 354; 59 Am. Dec. 707; *Nichol* v. *Lytle*, 4 Yerg. 456; 26 Am. Dec. 240; *Truett* v. *Adams*, 66 Cal. 218; *Sneed* v. *Osborn*, 25 Cal. 619.) The court erred in allowing witnesses to testify that the fence was capable of turning stock. The sufficiency of the fence was for the court to determine. (*Enright* v. *Railroad Company*, 33 Cal. 230; *Shafter* v. *Evans*, 53 Cal. 32; *Norman* v. *Wells*, 17 Wend. 136; *Ferguson* v. *Hubble*, 97 N. Y. 507; 49 Am. Rep. 544.) Struve's possession of any of the land in suit came from a mistake as to the boundary of the land of Charles Silvarer, and such possession was not adverse to Silvarer. (*Allen* v. *Reed*, 51 Cal. 362; *Shields* v. *Haley*, 61 Cal. 157; *Sartain* v. *Hamilton*, 12 Tex. 219; 62 Am. Dec. 524; *Worcester* v. *Lord*, 56 Me. 265; 96 Am. Dec. 456.)

*A. S. Kittredge*, for Respondents.

The partition suit determined title between Patterson, and the other interest-holders with him. (*Christy* v. *Spring Valley Water Works*, 68 Cal. 73.) It therefore gave Patterson and his successor, Hansen, standing as an adjoining owner, to sustain the agreement with Silvarer. The verbal agreement executed and followed by possession under it was valid, and governed the parties and their vendees. (*Kip* v. *Norton*, 12 Wend. 130; 27 Am. Dec. 120; *Kellogg* v. *Smith*, 7 Cush. 376, 380;

*Sneed* v. *Osborn*, 25 Cal. 619; *Hastings* v. *Stark*, 36 Cal. 122; *Truett* v. *Adams*, 66 Cal. 223.) Hansen's occupation and exercise of ownership put plaintiffs on inquiry, and that was equivalent to notice. (*Lestrade* v. *Barth*, 19 Cal. 676; *Talbert* v. *Singleton*, 42 Cal. 395.) There need be no dispute to support an agreed boundary, when, as a practical question, there is uncertainty about it. (*Helm* v. *Wilson*, 76 Cal. 476.) The tax deed, though invalid, gave to Dunlap color of title. (*Tryon* v. *Huntoon*, 67 Cal. 328; *Packard* v. *Johnson*, 68 Cal. 123; *Oglesby* v. *Hollister*, 76 Cal. 136.) Struve could avail himself of privity with Dunlap's adverse possession. (*Roper* v. *McFadden*, 48 Cal. 348; *San Francisco* v. *Fuldes*, 37 Cal. 349; 99 Am. Dec. 278.)

The COURT.—Ejectment. The defendant Struve claims to have become the owner of a portion of the land described in the complaint by adverse possession. The defendant Hansen claims another portion of the land by virtue of a boundary line alleged to have been agreed upon by the plaintiff and himself in 1873.

1. The facts found by the court show that the defendant Struve made out a valid defense under the statute of limitations. The deeds under which he and his predecessors claimed were sufficient color of title, and these deeds, taken in connection with the evidence as to the character of the natural and artificial fences and the actual possession of the defendant, show the extent of the possession claimed by defendant, and that he was holding in good faith under claim of right in himself, and adverse to all others. (*Wilson* v. *Atkinson*, ante, p. 485; *Smith* v. *Shattuck*, 12 Or. 362; *Oglesby* v. *Hollister*, 76 Cal. 136; *Grimm* v. *Curley*, 43 Cal. 253; *Tryon* v. *Huntoon*, 67 Cal. 328.)

The court found that in 1864 Dunlap was in possession of the land claimed by defendant Struve herein, together with a tract of land adjoining the same on the

west; that in 1867 W. H. Patterson, who was the owner
of said adjoining tract, entered into a contract in writing
to sell and convey said tract to Dunlap, and in March,
1873, delivered to Dunlap a deed conveying said adjoin-
ing tract; that there has never been a fence between or
dividing said tract and the parcel claimed by defendant,
but that said parcel, with said adjoining tract, has always
constituted a single body of land as a farm; that from
the fall of 1864 to the end of October, 1873, Dunlap was
in the actual possession and occupation of said body of
land, including said parcel, and during all that time said
land was inclosed and protected by a substantial inclos-
ure throughout and around its whole circumference, and
was resided on by said Dunlap and his family; that said
land was cultivated and improved by him, and used by
him for the ordinary purposes of husbandry and pastur-
age; that this possession and use by Dunlap was at all
times open, notorious, uninterrupted, exclusive, under a
claim of title in himself, and exclusive of any other right
(except in said Patterson between the dates of the contract
and the deed); that on October 27, 1873, Dunlap conveyed
to Struve the tract purchased from Patterson, and on
October 31, 1873, conveyed the land to Struve, which
is herein claimed by him; "that thereupon said Struve
took actual occupation and possession of said premises,
including said parcel herein claimed under said deeds,
and from October, 1873, to the time of the commence-
ment of this suit, and ever since, he in like manner as
said Dunlap had taken, possessed, occupied, cultivated,
improved, and used the same, constituting, as before, a
single body of land or farm, and inclosed and protected
as before by a substantial inclosure, openly, notoriously,
continuously, uninterruptedly, exclusively, under claim
of title in himself, exclusive of any other right; that
from 1864 to the time of the commencement of this suit
the plaintiff, William Silvarer, and his grantor, Charles
Silvarer, had actual notice and knowledge of the said

possession, use, and occupation of said Dunlap and Struve, and of said inclosure, and of the acts of ownership exercised by them over said body of land, and at no time did either of them make any objection to the same until this suit was brought."

These findings, we think, are supported by the evidence. The court erred in admitting in evidence the deposition of Dunlap, but the error, we think, was harmless. The testimony of Dunlap, so far as it refers to Struve's claim, shows the possession of the latter. Upon the question of possession there is practically no conflict. The evidence offered by the defendant to show his possession is so strong and direct, and that of the plaintiff, which tends to contradict it, is so qualified and weak, that the decision could not well have been otherwise than in favor of Struve, if the deposition of Dunlap had been excluded. The fact that Struve did not suppose he was interfering with anybody's rights does not defeat his right to claim by adverse possession. (*Grimm* v. *Curley, supra.*) It is, however, a circumstance tending to establish more strongly the good faith and exclusiveness of his own claim.

We see no error in the rulings of the court admitting in evidence the testimony of the Dunlaps and of Struve as to the character of the fence. The witnesses referred to had been living on the ground, and were familiar with the fence and its operation from personal observation. They testify, not so much as a matter of opinion, but as a matter of knowledge, that the barriers constituting the fence did operate to keep the stock out.

2. The court found that in the spring of 1873, and prior thereto, defendant Hansen and Charles Silvarer were the owners, and in the actual and exclusive possession, each claiming ownership in his own right of adjoining tracts of land; that during said period the true boundary line between the tracts was uncertain and indefinite; that while they were the owners and in the possession of said

tracts (spring of 1873), Hansen proposed to Silvarer that
they should establish and mark a line as a boundary be-
tween their said tracts, and construct a division fence on
it; that Silvarer agreed to this, went on the ground with
Hansen and others, placed stakes as upon the line, and
then agreed with Hansen that the line thus designated
should be the division line and boundary between said
tracts; that Hansen also agreed to this, and the fence was
then so erected on the line so agreed upon, and was ac-
cepted, recognized, and agreed by said parties to be the
partition fence, and has remained there as such to the
present time; that after the erection of said fence, both
parties occupied and used their lands exclusively on each
side respectively up to the line of the fence so built, and
that Hansen from that time continuously to the present
time had been in the actual and exclusive possession and
use under said agreement of the said tract on his side
up to the line of said fence; that after the erection of
the fence, and prior to the year 1876, Hansen dug a ditch
along the fence on his side; that the land affected by
the agreement is the parcel described in the defendant
Hansen's answer; that Charles conveyed to William Sil-
varer, May 17, 1877, the premises described in the com-
plaint, which included the parcel of land claimed by the
defendant; that plaintiff then had notice of the said agree-
ment between Charles Silvarer and the defendant Hansen,
and of the establishment and location of said agreed line
and the fence thereon as the boundary or division line
between them along the easterly side of said parcel.

We think the evidence supports these findings. The
boundaries of the Corralitos and Pajaro ranches con-
flicted; the easterly boundary of the Corralitos, as desig-
nated in the patent, was the "center of the slough," and
the westerly boundary of the Pajaro rather close to the
upland. Between these two boundaries, therefore, was
left a strip of slough land which is the subject of contro-
versy between the adjoining claimants. Hansen pur-

chased from Patterson on the Corralitos side and went into possession of a portion of the slough land. Silvarer held adjoining lands on the Pajaro side. The Corralitos lands held by Hansen were contiguous to the lands of Silvarer.

The contract from Patterson was properly admitted in evidence to show the extent and nature of his claim in June, 1868, and this contract and his possession and acts thereunder, we think, were sufficient to constitute him, so far as Silvarer was concerned, an adjoining owner within the meaning of the authorities on questions of agreed boundary lines, and to enable him to make a valid agreement with Silvarer for a division line. Patterson's claim evidently had some substance, and it was judicially determined in his favor by the decree of partition in 1871. Hansen received a deed from Patterson in 1876, before the commencement of this suit. Silvarer seems to have recognized Hansen as an adjoining owner; he testified that defendant asked him for a quitclaim deed of the land in suit in 1874, and he told him that his (Hansen's) land was on one ranch, and his (Silvarer's) was on another. He said: "I told him that I had no quitclaim to give. My land was on the Bolsa del Pajaro, and his land was on the Corralitos." The evidence is quite clear that the defendant Hansen fenced and ditched the land upon the strength of the agreement made with Silvarer. The boundaries of Silvarer's land were uncertain, indefinite. It is in testimony that to make a survey to include the disputed premises the surveyor would have to go by the "lay of the ground, and by fences, and possession of adjoining occupants, and by rejecting and changing and adding calls of deeds." The lines of the two ranches overlapped. Neither of the parties could tell where Silvarer's lines were. The conflict was one which could be determined only by judicial investigation. It seems that they preferred to adjust it between themselves. It is not necessary in such cases that there

shall be an actual dispute as a basis for an agreed boundary line. (*Helm* v. *Wilson*, 76 Cal. 476.)

The interest, or title, held by Patterson does not clearly appear, but as stated before, the presumption is, that Patterson had some valid claim. The decree entered in the suit for the partition of the Corralitos ranch gave him a title conclusive upon all other parties to the suit, and those in privity with them, and constituted a color of title as against all the world. There can be no doubt, we think, that the conveyances from Patterson to Hansen, and the judgment roll in the partition suit of Patterson v. Roach and others, were properly admitted in evidence. The suit referred to was brought by Patterson against Roach and others. We have not the record of that suit before us here; it does not appear who the other defendants were. The presumption we indulge here is always in favor of the correctness of the finding of the court below; it is for the appellant to show error.

What we have said above respecting the deposition of Dunlap is applicable to the case made by the defendant Hansen. It was improperly admitted in evidence. The testimony of Hansen tended to establish an agreement between defendant and Silvarer for a division line, but, as in Struve's case, we think the error was not prejudicial. Hansen's occupancy of the land, his building of the fence, and excavation of the ditch, seem to be admitted. The evidence is overwhelmingly in support of the finding of the court, regardless of the testimony of Dunlap. The denial made by Silvarer in his testimony was rather qualified.

3. There was no error in the refusal of the court to strike out certain denials in the answers. Said answers were filed in August, 1877. The case was tried without any motion having been made to strike out any portions of the answers. Judgment was rendered in 1878, an appeal was taken, and the judgment was reversed. The *remittitur* was filed in the lower court on March 12, 1879,

but no motion to strike out was made until just before the commencement of the second trial on May 4, 1885. Under these circumstances the motion came too late. The delay operated as a waiver by the plaintiff of the objection.

Several assignments of error are made as to rulings of the court on evidence offered and admitted. Cross-examination is largely in the discretion of the trial court. We see no abuse of discretion here.

Judgment and order affirmed.