## UNION TRANSP. CO. v. BASSETT et al.*

### No. 15,899; October 15, 1896.

#### 46 Pac. 907.

**Harbor Commissioners — Review of Regulations by Courts.—** Under Political Code, section 2524, authorizing the state harbor commissioners to make "reasonable" regulations concerning the management of the property intrusted to them, and to assign suitable wharves for the exclusive use of vessels, the courts may review the regulations of said commissioners, and declare them invalid, if unreasonable.

**Harbor Commissioners — Reasonableness of Regulations.—** Whether a regulation of the board of state harbor commissioners changing the docking place of a steamboat company, and requiring

---

*For subsequent opinion in bank, see 118 Cal. 604, 50 Pac. 754.

it to land its passengers and freight at a different wharf from that to which it had previously been assigned, is unreasonable, is a conclusion of law, to be deduced by the court from the facts proved.

**Harbor Commissioners—Restraining Regulations.**—In an Action to Enjoin the state harbor commissioners from enforcing a resolution requiring plaintiff steamboat company to change its landing place from the C. wharf to the M. wharf, four hundred yards distant, it appeared that nearly all the freight carried by plaintiff and its competitors consisted of wheat and flour, which the shippers generally required should be delivered at the B. and C. wharves, near which the market for produce of this kind had been established for more than ten years; that, as there was no sale for such produce at or near the M. wharf, carriers could not procure it as freight to be delivered there; that there was active competition for freight between plaintiff and another carrier, which had a landing place at the B. wharf; that said order, if executed, would discriminate against plaintiff, to its great detriment, and compel it to suspend business as a carrier of freight on that route; and that, though the C. wharf was overcrowded, there were boats, other than plaintiff's, which might be removed without prejudice to their interests. Held, that the resolution was unreasonable, and its execution would be enjoined.

**Harbor Commissioners—Action to Enjoin Resolution.**—In an action to restrain the state harbor commissioners from enforcing a resolution requiring plaintiff steamboat company to change its landing place, the testimony of plaintiff's secretary as to a conversation with one K., in which the latter suggested that he could, for a consideration, effect a compromise, was inadmissible, there being nothing to show that K. was in any way connected with defendants, or that they authorized or knew of his proposal to plaintiff.

**Harbor Commissioners—Action to Enjoin Resolution.**—In an action to restrain the state harbor commissioners from enforcing an order requiring plaintiff steamboat company to change its landing place, the admission of hearsay evidence tending to impugn defendants' good faith in passing the order of removal is harmless, if the court finds that the order is unreasonable, since such finding warrants the relief sought, irrespective of the motives of defendants.

APPEAL from Superior Court, City and County of San Francisco; William T. Wallace, Judge.

Action by the Union Transportation Company against Charles Bassett and others, composing the board of state harbor commissioners, to enforce the execution of a resolution passed by said board. From a decree for plaintiff and from an order denying a motion for a new trial defendants appeal. Affirmed.

F. S. Stratton and Tirey L. Ford for appellants; Reddy, Campbell & Metson for respondent.

VANCLIEF, C.—The plaintiff is a corporation organized under the laws of this state for the purpose of carrying passengers and freight on steamboats to be run upon the navigable waters of this state, and especially between the cities of Stockton and San Francisco. In February, 1892, plaintiff applied to the defendants for a suitable berth for their boats at some one of the wharves under their control or supervision at the waterfront of the city of San Francisco. Thereafter, on June 8, 1892, the defendants assigned and set apart berth room for plaintiff's boats at and upon Clay street wharf, which plaintiff thereafter occupied and used as a landing place for its boats, and by discharging freight thereon and receiving passengers and freight therefrom daily, until the commencement of this action. On August 2, 1892, the board of harbor commissioners adopted a resolution by which their former order assigning berths to the steamers of the plaintiff at Clay street wharf was rescinded, and berths were assigned to them on Mission street wharf, to be selected by an agent of the plaintiff and the chief wharfinger. This order was opposed and protested against by the plaintiff on the ground stated in the complaint, and was immediately followed by a protest, signed by about forty firms of produce and commission merchants, as follows:

"Gentlemen: We, the undersigned, produce and commission merchants of San Francisco, learning that steps are being taken to remove the steamers of the Union Transportation Company from Clay street wharf to Mission street wharf, most earnestly protest against such change, for the following reasons: First. The center of the produce and commission business in San Francisco is, and has been for many years, on Jackson, Washington, and Clay street wharves, and it would be injurious to such business to have steamers bringing produce to land as far away as Mission street. Second. It is for the interest of the general public, as well as ourselves, to have a competing line of steamers on the San Joaquin river; and, if the Union Transportation Company's line of steamers should be compelled to go to Mission street wharf, it would preclude the possibility of our having produce shipped by that line, as we would be unable to dispose of it at Mission street wharf. Third. From actual experience, it has been

proven that to undertake to transfer the produce business to Mission street wharf results in destroying that business. Wherefore, we most respectfully ask that the steamers 'Captain Weber' and 'Dauntless' be permitted to land at Clay street pier, as heretofore.''

On August 25th the board passed another resolution relating to the same matter, as follows: ''On motion of Mr. Alexander, seconded by Mr. Brown, the following resolutions were adopted: Resolved, that any use heretofore permitted of the Clay street wharf, on the harbor front of city and county of San Francisco, by the Union Transportation Company, a corporation, for the docking of its vessels at said wharf, and the use thereof by said company of any portion of said wharf for wharfage or other purposes, be, and the same is hereby terminated. This resolution to take effect, and such use terminate, on Tuesday, the 27th day of September, 1892. Resolved, further, that said company be notified at least thirty days prior to said September 27th of said notice and resolution, and termination on that day, and of such use; that on said day such further proceedings, by resolutions or otherwise, will be taken to render effectual the termination of any use by said company. Also, that a copy of this resolution be served by the chief wharfinger, or secretary or assistant secretary of this board, on the president, secretary, manager, or other officer or agent in charge of said company's affairs in this city and county; and that a copy be forthwith addressed by mail to said company, at Stockton, California. Resolved, further, that the chief wharfinger be, and he is hereby, instructed to execute the purposes of this resolution, and of any further resolutions hereafter passed in the premises. Resolved, that, after September 27th next, said company be assigned to the use of Mission street wharf, at such berth or place to be mutually agreed upon by the chief wharfinger and agent of said company: provided, however, that nothing in the resolution contained shall be intended or construed as giving or granting to said company any right to the use of said wharf other than that they may now have, or may have already had, by operation of law.''

On October 5, 1892, this action was commenced to enjoin the defendants from enforcing said resolutions and orders; and such injunction pendente lite, or until the further order of the court, was then issued and served on defendants. The

grounds for the injunction are stated in the complaint as follows: "That the character of the freight carried by plaintiff is of that nature as to absolutely require its delivery and receipt upon or at the Clay street wharf (or the Washington street wharf, which is the next adjacent wharf thereto), and that those for and from whom it is possible for plaintiff to get freight to carry on said steamers cannot and will not furnish or give any goods, produce or substance to plaintiff, or anyone else engaged in the same or other business, who cannot or will not deliver and receive the same at either of the wharves above named; and it has been the custom for more than ten years last past to receive goods and produce of the character carried by plaintiff at said wharves. That plaintiff, relying upon said order of defendants giving it berth room at said Clay street wharf, made and entered into a large number of freight contracts and agreements with other persons to hereafter carry to and from, and receive and deliver upon, said Clay street wharf, large quantities of freight, for the carriage of which it is to receive large sums of money from said patrons. That during the times herein mentioned the plaintiff has been, and now is, actually engaged in sharp and active competition with other corporations and persons who have had, and now have, berth room at the wharves above mentioned, and who are now engaged in the same business as plaintiff. That said defendants have unreasonably, arbitrarily, and without any cause or reason whatever, save for the purpose of discriminating against plaintiff, and giving to its competitors an advantage over it, made an order and passed a resolution changing the berth and landing-place of plaintiff's said steamers from said Clay street wharf to Mission street wharf, which said last-mentioned wharf is distant quite a long way southerly from said Clay street wharf, and is entirely outside of the district within which plaintiff can get any freight or passengers to carry on or continue its business with said patrons, as the said Mission street wharf is so situated that neither passengers, nor persons shipping the character of freight that plaintiff carries, will patronize any vessels landing at the same. And plaintiff further alleges that the going to and coming from said Mission street wharf will be attended with great danger to life and property. And, upon information and belief, plaintiff alleges that said order was made by said defendants arbitrarily, and for the

purpose of injuring and damaging plaintiff, and for the purpose of discriminating against plaintiff in the conducting and carrying on its said business, and to prevent it from carrying on the said business, and to prevent plaintiff from exercising its rights as a common carrier, and to prevent it from carrying freight and passengers from and to the city of San Francisco, and to utterly ruin and destroy its business, and render its property useless and of no value, in order that its competitors in said business aforesaid should thus obtain advantage over plaintiff, and that plaintiff should be driven entirely out of business. Plaintiff further alleges that said defendants have notified plaintiff that it must immediately cease landing at said Clay street wharf, and that it must hereafter land at and receive and unload freight from its said steamers at the said Mission street wharf, and not elsewhere. Plaintiff further alleges that the effect of said order, if enforced, will be to drive plaintiff out of the business entirely, and will also make it liable to be proceeded against for breach of contract by the various persons with whom it has contracted to receive, deliver and carry freight from and to said Clay street wharf for a failure to do so, and that said order is unjust, unreasonable and unfair, and was not made for the convenience of the public, but will kill and prevent all competition in the future, and will compel plaintiff to hang up its boats and vessels, if the said order is carried into effect.'' The answer of defendants denies the allegations of the complaint relating to the grounds upon which the injunction was asked.

The court, without a jury, found the facts and conclusion of law as follows:

''Finding of Facts. All and singular the allegations contained and set forth in the complaint, and in the amendment to the complaint, at the trial, are true in point of fact, and were true at the commencement of the action. The order made by the defendants in the month of August, 1892, purporting to change the docking place and berth room of the plaintiff's boats from Clay street, where they then were, was arbitrary, and was made without any just cause, and without any reason or motive therefor on the part of the defendants, other than that of injuring and damaging the plaintiff in its transportation business, and to assist others, its rivals and competitors in the business, in forcing the plaintiff

to discontinue the running of its said boats. The orders and action of the defendants in and about the removal of the plaintiff's said boats from said Clay street wharf were not made or taken by the defendants for any reason or upon any ground or with any intent such as they have alleged in their answer therein, but were made only with the intent and for the purpose on their part as is alleged in the complaint in their behalf.

"Conclusion of Law. There must be a decree for the plaintiff as prayed in the complaint, and it is so ordered."

A final decree was entered in accordance with these findings. The defendants' motion for a new trial having been denied, they have appealed from the final decree, and also from the order denying their motion for a new trial.

Appellants contend that none of the findings of fact from which the conclusion of law was drawn are justified by the evidence. The evidence is voluminous, occupying two hundred and seventy pages of the printed transcript. Then there are twenty-six specifications of insufficiency of evidence, occupying nine pages, and consisting principally of statements of "what the evidence fails to show." Eleven of these specifications apply to issues tendered by the affirmative allegations in the answer of the defendant; and these specifications are "that the evidence fails to show" that any one of such affirmative allegations in the answer is true, and that none of such allegations are justified by the evidence. All this, however, is in perfect accord with the findings of the court. Perhaps the attorney for defendants did not intend what he plainly said in these so-called specifications, and they are here referred to only for the purpose of calling attention to the incoherency, indefiniteness and tiresome prolixity of the statement on motion for new trial. Then there are forty-nine specifications of errors in law, occupying fifteen pages. The principal specification of insufficiency of evidence urged here is that the evidence is insufficient to justify the finding that the order for the removal of plaintiff's boats was unreasonable and unjust. This, however, is not a fact, but, in cases of this kind, is a conclusion of law, deduced by the court from the facts and circumstances proved: Dill. Mun. Corp., 4th ed., sec. 327; Ex parte Frank, 52 Cal. 610, 28 Am. Rep. 642. The facts and circumstances found by the court surely support the conclusion of law that

the order of the board removing plaintiff's boats was unreasonable and unjust. What were the findings of fact which support this conclusion of law? And were such findings justified by the evidence? The material substance of these findings is as follows: That nearly all the freight carried to San Francisco by plaintiff and its competitors consists of that kind of produce of land, exclusive of wheat and flour, which is customarily landed and delivered at the Clay street and Washington street wharves, and which is generally, by the shippers thereof, required to be delivered at those wharves, for the reason that the market place for such produce, for more than ten years, has been concentrated and established at and near those wharves, and that carriers could not procure such produce as freight, to be delivered at Mission street wharf, because it is four hundred yards south of Clay street wharf, where such produce is seldom delivered, sold or called for; that, from the time plaintiff commenced to run its boats (June 8, 1892) until it was ordered to remove from Clay street to Mission street, there was an active and sharp competition for freight between plaintiff and another line of boats on the same route, and having a landing-place at Washington street wharf, to wit, the California Navigation and Improvement Company; that the order of removal unfairly and unnecessarily discriminated between plaintiff and said California Navigation and Improvement Company, to the great detriment of the former and advantage of the latter, and that said order was arbitrarily made, without just cause, and for the purpose of thus discriminating against plaintiff and in favor of its competitor, and not for the purpose or with the intent alleged in the answer of the defendants; and that, if executed, the order for removal would compel plaintiff to suspend the carrying business on said route, to its great and irreparable injury. I think these findings are supported by a considerable preponderance of evidence, except in so far as they may tend to impute dishonest motives to the commissioners, but that, independently of the motives of the commissioners, the findings support the judgment.

The powers of the commissioners are defined, and their duties prescribed, so far as they relate to the subject of this action, by section 2524 of the Political Code, as follows: "The commissioners shall have possession and control of that portion of the Bay of San Francisco [described], together

with all the improvements, rights, privileges, easements and appurtenances connected therewith, or in anywise appertaining thereto, for the purposes in this article provided. . . . . The commissioners shall have power to make reasonable rules and regulations concerning the control and management of the property of the state which is intrusted to them by virtue of this article; . . . . [shall] set apart and assign suitable wharves, berths, or landings for the exclusive use of vessels." "Where the legislature, in terms, confers upon a municipal corporation the power to pass ordinances of a specified and defined character, if the power thus delegated be not in conflict with the constitution, an ordinance passed pursuant thereto cannot be impeached as invalid because it would have been regarded as unreasonable if it had been passed under the incidental power of the corporation, or under a grant of power general in its nature. In other words, what the legislature distinctly says may be done cannot be set aside by the courts because they may deem it to be unreasonable, or against sound policy. But where the power to legislate on a given subject is conferred, and the mode of its exercise is not prescribed, then the ordinance passed in pursuance thereof must be a reasonable exercise of the power, or it will be pronounced invalid": Dill. Mun. Corp., sec. 328. Under the rule thus expressed by Judge Dillon, even if the power to make regulations and to assign berths and landing places to vessels had been given to the harbor commissioners without any express qualification, it would nevertheless have been subject to the limitation that such regulations and orders assigning berths, etc., must be reasonable, otherwise invalid. The legislature, however, did not leave this limitation upon the power of harbor commissioners dependent on implication, but expressly limited it to the making of reasonable regulations, and to the setting apart of suitable wharves, berths, etc., to vessels. Therefore it cannot be doubted that the courts may review the regulations and orders of the harbor commissioners in respect to the requisite attribute of reasonableness, and pronounce them invalid if found to be unreasonable. As applicable to this point, see, also Ex parte Frank, 52 Cal. 606, 28 Am. Rep. 642; Ex parte Kearny, 55 Cal. 225; Spring Valley Waterworks v. City of San Francisco, 82 Cal. 286, 16 Am. St. Rep. 116, 6 L. R. A. 756, 22

Pac. 910, 1046; Mayor etc. of Baltimore v. Radecke, 49 Md. 217, 33 Am. Rep. 239; Tugman v. Chicago, 78 Ill. 405; Dill. Mun. Corp., sec. 319 et seq., and notes.

It is urged by the defendants that the slip between Clay street wharf and Washington street wharf, in which plaintiff's boats were first assigned a berth, was overcrowded, and for that reason it was absolutely necessary that some of the boats should be removed therefrom to some other wharf. Conceding this, it does not appear that it was necessary to remove plaintiff's boats to another wharf which was unsuitable to its business. On the contrary, it appears that at least two other boats that occupied berths in said slip, to wit, the "General McDowell," a government boat, and the steamer "Humboldt," might have been removed to other wharves suitable to their business, and without prejudice to their interests. When asked why they determined to remove plaintiff's boats, rather than one of the other lines, Mr. Alexander, a member of the board, answered: "To move the other vessels would not accomplish what we wanted to accomplish particularly. The 'Humboldt' had already been moved once. She had been moved from her place at Clay street to Washington, and even if it accomplished the object, I don't think the board would be inclined to move her from pillar to post." No reason was given why the "General McDowell" could not have been removed. What object the board "wanted to accomplish particularly," other than to relieve the crowded condition of Clay street wharf, appears only by the further testimony of Mr. Alexander, who said: "The condition of that part of the city was becoming so crowded, we recognized the fact it was necessary to distribute this line of business [produce business] all over the city. To concentrate it for the next twenty years is out of the question." Yet the policy of the law creating and governing the harbor commission seems to favor the concentration of each kind of business, and it is obvious that the public would be better accommodated by such concentration. One who desires to buy a particular kind of goods, say lumber, coal, fish or farm produce, must find it very inconvenient to travel two or three miles along the waterfront to ascertain where he can buy to the best advantage. Therefore, I think the court properly found against the plea of necessity.

It is urged that the courts will not declare an order or regulation of the governing board of a municipal corporation void, except in a plain case of abuse of authority. Conceding this, it does not follow that the courts are powerless to give relief in all cases where the evidence is conflicting, though it may be admitted that the appellate court should scrutinize the evidence more closely in cases of this kind than in ordinary cases, and require the record to show a satisfactory preponderance of the evidence in favor of the findings of the trial court. In other words, the findings of fact from which the unreasonableness of the order, regulation or by-law is deduced should clearly appear to be justified by the evidence, and the facts found should clearly warrant the conclusion of unreasonableness; and such, I think, are the conditions shown by the record in this case. Indeed, there is no substantial conflict of evidence, except upon the issues as to the necessity of the order of removal above considered, and as to the extent of the injury to plaintiff. Speaking of the injurious effect of the order of removal on the business of plaintiff, Mr. Alexander said, "The opinion of the board was —and my individual opinion—that at first it might be something of a hardship upon them to move, but we believed in time they could build up a business." And it was not denied that the effect of the removal might be such as alleged in the complaint and found by the court.

Of the forty-nine specified errors in law, the only one urged here is that the court erred in admitting certain hearsay evidence. C. M. Keniston, a witness for plaintiff, was permitted to testify to a conversation he had with a Mr. Knapp after the final order of removal was made. The testimony was objected to on the ground that it was irrelevant, immaterial and mere hearsay. The objectionable testimony was, in substance: That Knapp said to Keniston, who was the secretary of the plaintiff corporation, that he (Knapp) believed it possible that all the factions could be compromised so that plaintiff could be allowed to remain at Clay street wharf; that he knew more about the case, probably, than anyone else; that he thought he was in a position to compromise the matter, but, of course, it would require money to do it—he thought, about $2,000; parties would have to be fixed up, in order to allow plaintiff to remain at Clay street wharf. That Knapp repeated the substance of the above to Mr. Gillis, the

president of the plaintiff, and that witness and Mr. Gillis declined to pay any sum for the purpose of effecting a compromise. It appeared that Knapp had acted as the private detective for the California Navigation. and Improvement Company about two years immediately preceding this conversation with Keniston, and that he had assisted in procuring the order removing plaintiff from Clay street wharf; but there is nothing in the evidence tending to prove that he was in any wise connected with the defendants, nor that any one of the defendants authorized, or even knew of, his proposals to Keniston or Gillis. That this testimony of Keniston was not only mere hearsay, but irrelevant and immaterial, and for these reasons should have been rejected, admits of no doubt, but that defendants were not injured thereby seems quite as clear. The only possible effect it could have had was to cast a mere suspicion upon the motives and good faith of the defendants; but, as above remarked, the judgment rests firmly on the finding that the order of removal was unreasonable and unjust, independently of the motives or good faith of the commissioners, and must have been the same whether their motives were good or bad. The relief asked and given may be regarded as indivisible, and such as must have been wholly given or entirely denied, and could not have been diminished or affected by proof of good faith of defendants. The following cases were cited to the point that the hearsay evidence was harmless, and that the judgment should not be reversed for the error of admitting it: Norwood v. Kenfield, 30 Cal. 394; Kisling v. Shaw, 33 Cal. 425, 91 Am. Dec. 644; Mott v. De Reyes, 45 Cal. 380; De La Guerra v. Newhall, 55 Cal. 21; Silvarer v. Hansen, 77 Cal. 579, 20 Pac. 136; Jones v. Tallant, 90 Cal. 386, 27 Pac. 305; Clavey v. Lord, 87 Cal. 413, 25 Pac. 493.

The decree enjoins the board from enforcing the order of removal to Mission street, "and from unlawfully requiring plaintiff to dock its boats elsewhere than at said Clay street wharf." Appellants contend that this gives the plaintiff a perpetual vested right to dock at Clay street wharf and enjoins defendants from interfering therewith for any cause. But such is not the meaning of the decree. The board is not enjoined from removing plaintiff's boats from Clay street wharf for any lawful cause, nor from making any reasonable

regulation or order. I think the judgment and order appealed from should be affirmed.

We concur: Searls, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.