[Civ. No. 371.   Third Appellate District.—November 15, 1907.]

# M. E. STECKTER, Appellant, v. J. Z. EWING and FRANK EVANS, Respondents.

ADVERSE POSSESSION—PRESCRIPTIVE TITLE UNDER FORECLOSURE OF MORTGAGE—TENANCY OF APPELLANT—BELIEF OF PARTIES—RECORD TITLE.—In an action involving adverse possession and a title by prescription acquired under foreclosure of a mortgage, where all parties interested believed that a mortgage made by appellant and her deceased husband to a bank, and the title acquired under foreclosure thereof, included the premises in controversy, and where, after appellant's son in law acquired that title, appellant attorned to him, and became his tenant under rental for ten years of the premises in controversy, and he paid all taxes on the whole property and had a possession thereof actual, open, notorious, hostile, continuous and uninterrupted, under a claim of title, exclusive of any other right, as his own for that period, after which he conveyed the whole title to one of the respondents, to whom the whole property was pointed out by appellant, and to whom appellant surrendered exclusive possession, such respondent acquired the prescriptive title as against the appellant, though the record title did not include the premises in controversy.

ID.—POSSESSION COMMENCED UNDER MISTAKE.—Title by adverse possession may be acquired, though the adverse possession may have commenced under a mistake.

ID.—INEXCUSABLE NEGLIGENCE OF APPELLANT—PROTECTION OF INNOCENT PARTY.—The appellant was guilty of inexcusable negligence in suffering with passive indifference an adverse title to ripen against her before her eyes, and it would be unjust under the circumstances shown, after an innocent third party has purchased the land, to declare that she should be upheld to the prejudice of such innocent party, in asserting rights lost through her own fault.

APPEAL from a judgment of the Superior Court of Napa County.  H. C. Gesford, Judge.

The facts are stated in the opinion of the court.

W. F. Henning, for Appellant.

F. E., H. L., and L. E. Johnston, for Respondents.

HART, J.—The plaintiff brought this suit to quiet title to certain real property situated in Napa county. The pleadings upon which the action was tried were the amended complaint and the amended answer thereto, and were verified. The issues tendered by the pleadings involve the claim by the plaintiff of the right to the possession of and title to the land in dispute and the alleged ownership of the same in the defendant Ewing. The answer pleads the statute of limitations (Code Civ. Proc., sec. 318) in bar of plaintiff's cause of action. The court, from the proofs, found in favor of the claim of the respondents that they held title to the property in controversy by adverse possession and caused judgment to be entered dismissing plaintiff's complaint.

It is from said judgment, accompanied by a bill of exceptions, that this appeal is taken.

The premises in dispute are a part of what is known as the Caymus grant, situated in Napa county, and consists of a tract of land, with appurtenances and improvements, embracing, approximately, forty-seven and forty-two hundredths acres, upon which the appellant and her husband, John Steckter, now deceased, filed a declaration of homestead on the ninth day of March, 1877. This land, so selected as a homestead, adjoins another tract of land, carved out of said grant, consisting of three hundred and sixty-seven acres, title to which was acquired by appellant and her husband by purchase from one S. C. Hastings, on the twenty-ninth day of September, 1869, subsequently to the location by appellant and husband upon the land in controversy. The whole property—that acquired from Hastings and the premises in controversy—was inclosed by and within one general fence, sufficient to turn stock, "as early as the year 1864," and the two tracts thereupon became, to all practical intents and purposes, one body of land. When appellant and husband located on the land in dispute, one Yount was the owner of said Caymus grant, and Hastings later succeeded to the Yount title. There were two surveys of the grant made many years ago, by the first of which the westerly line of said grant was made to correspond substantially with the easterly line of the premises in dispute, and by the second of which the westerly boundary line of the grant corresponded with the westerly line of said premises. Under the last survey, it will be seen, the contested

premises were brought within the exterior boundaries of said grant. Neither the appellant nor the respondents could, however, as to the premises described in the complaint, trace the source of title to or connect it with the Yount title. John Steckter died in the year 1902; but, prior to that event, to secure an indebtedness, he and the appellant executed to the Bank of Napa a mortgage, the date of which does not appear from the record, upon "the lands bounded on the west by the premises described in the complaint, including a portion of the land described in the declaration of homestead," but not including that portion of the homestead lands lying westerly of said line and which constitute the subject of this litigation. On the third day of April, 1894, after due proceedings, said mortgage was foreclosed, and a sale of the mortgaged premises was decreed by the superior court, and a sale of the same under said decree made on the fifth day of May, 1894, the bank (mortgagee) becoming the purchaser thereof for the sum of $7,847. A deed to the mortgaged land was thereupon executed to the bank, and thereafter and on the eighth day of November, 1894, the bank sold and transferred said land to one Sumner Randall, son in law of the appellant, for the sum of $8,000. Randall executed a mortgage on the land to the bank to secure the payment of most of the purchase price of said property. During the period covered by the existence of the mortgage from appellant and her deceased husband to the bank, the appellant remained in possession of the mort-gaged land and resided on the premises described in the complaint. After Randall bought the property he entered into a verbal agreement with appellant by which the latter was to continue in possession of the same in consideration of the payment to Randall of a yearly sum sufficient to meet the interest on his indebtedness to the bank. On the 30th of September, 1903, Randall and wife transferred the property to respondent Ewing, the deed of conveyance describing the land as it was described in the mortgage to the bank and in the deed from the latter to Randall, and within which description the particular premises in controversy were not included. On September 5, 1904, Randall executed to Ewing another deed for the same property and included therein the premises described in the complaint.

From the evidence it is clear that Randall, as well as the appellant, when he purchased the property from the bank,

believed that the premises over which this action arose were a part and included in the description of the property contained in the deed from said bank to said Randall; that the respondent Ewing, when he bought from Randall, believed that the land so purchased included said disputed premises. The appellant admitted that she had always thought the premises described in the complaint were comprehended in the land mortgaged to the bank, and that she did not discover the mistake until after she had given up possession of the whole property to Ewing. At the time Ewing purchased the property the appellant stated to both respondents that her lease from Randall would not expire until the 1st of November, 1903, but, as a matter of fact, she, so far as the record shows, of her own volition, quit the premises and delivered possession thereof to Ewing on the eleventh day of October, 1903. She did not at that time, or at any other time, claim to own any of the property. Harris, the executor of the will of appellant's deceased husband, testified that he had always supposed the property mortgaged to the bank and later sold to Randall included the premises in dispute. Both Ewing and Evans testified that when negotiations for the purchase of the property by the first named from Randall were pending they visited the property and that the boundaries of same as pointed out to them by appellant embraced the land in controversy. Plaintiff admitted that when the mortgage to the bank was executed she supposed the whole property, including the premises described in the complaint, was covered by that instrument, and that she labored under such belief, both as to said mortgage and the deed to Randall, as well as the deed from the latter to Ewing, up to and including the time she quit the premises and surrendered the possession thereof to said Ewing. She admitted paying rent—the sum necessary to pay the annual interest to the bank—to Randall for the occupation and use of the entire tract. The arrangement as to rent was, according to Randall, afterward changed, and thereby she agreed to return, in lieu of cash rent, one-third of the crops raised on the place during the year and later again she agreed to pay the sum of $500 yearly as rent. Randall made some improvements upon the property during the period of his ownership thereof, said improvements being put upon that part of the land in controversy. In short, all the parties connected with the property from the

time of the execution of the mortgage by the appellant and her husband to the bank to the time of the sale to Ewing believed the premises in litigation here were included in the property deeded by the Bank of Napa to Randall and by the latter to Ewing, and a reasonable inference from such belief by appellant is that the supposition of all parties thereto must have been the same when the mortgage was executed to said bank.

It is to be noted from the foregoing statement of the facts established at the trial that Randall for a period substantially of ten years had possession, through his tenant, of the premises in question and openly and notoriously claimed to own the same during all that time, and that the appellant, while holding personal possession and · using the premises during said period, admittedly held such possession as tenant of Randall, recognizing by acts and words his ownership and never during said period of time setting up any claim of ownership in herself or in any manner denying Randall's ownership and right to possession at the termination of the lease under which she held them. It is admitted that Randall paid the taxes upon the entire property from the time the bank conveyed to him until he sold to Ewing.

The appellant contends that the findings of the court upon the important points in the case are either not sustained by sufficient evidence or altogether without support from the proofs. The findings of the court that the plaintiff "has not been the owner or in the possession or entitled to the possession of the premises in dispute" and that defendants "have title and right of, in and to the said premises and to the whole thereof as against plaintiff" are challenged upon the ground that the evidence is insufficient to sustain them; that the evidence is insufficient to support the finding that Randall was, on the thirtieth day of September, 1903, the owner in fee, in possession and entitled to the possession of said premises and that he sold the same for a valuable consideration to respondent, Ewing; that the evidence is· not sufficient to support the finding of adverse possession by Randall, or that plaintiff's cause of action is barred by section 318 of the Code of Civil Procedure; that there is no evidence which supports the finding that the appellant was ever out of actual possession of said premises, etc.

The exceptions to the findings are apparently founded mainly upon the theory that there could be no adverse possession of the land in dispute as against the appellant so long as she remained in actual physical possession of the same, notwithstanding the fact that for a period of ten years she believed that the bank deeded all the land within the inclosure to Randall, and the further fact that she leased the land, including the homestead, from Randall and during all that time treated him as the owner of the whole thereof and as her landlord. In other words, the argument of appellant is that, inasmuch as the disputed land was not included within the description of the land mortgaged by herself and husband to the bank, nor included within the property conveyed by the latter to Randall, and because, furthermore, she never lost *actual* possession of the homestead, the statute could not run against her title. This contention, under the facts as established, cannot be maintained.

There are five elements essential to the establishment of an adverse possession sufficient to vest a perfect title: 1. The possession must be by actual occupation, open and notorious, not clandestine; 2. It must be hostile to the plaintiff's title; 3. It must be held under a claim of title, exclusive of any other right, *as one's own;* 4. It must be continuous and uninterrupted for a period of five years prior to the commencement of the action; 5. Payment of taxes. (*Unger* v. *Mooney,* 63 Cal. 595, [49 Am. Rep. 100], and authorities therein cited.)

The plaintiff herself, as we have seen, admitted that she always believed that the homestead or land in litigation was covered by the mortgage to the bank. She admitted that she believed that the entire tract of land, including the homestead, was conveyed by the bank to Randall. In fact, her belief that Randall bought all the land within the inclosure is best evidenced by the fact that, upon the sale to Randall, she immediately attorned to him by taking a lease of all the land from him, stipulating to pay, as rent, for the occupation and use thereof, such a sum annually as would pay the interest accruing upon the note from Randall to the bank, given for a large part of the purchase price of the land, and to secure which a mortgage was executed by Randall to the bank. She at all times, up to the day that she surrendered possession to Ewing, treated with Randall, with reference to all the land, as the owner thereof and as her landlord. For a few

years she paid the rent as originally agreed upon and then she and Randall entered into a new arrangement by which she was to return to the latter, by way of rent, one-third of the products raised upon the land. Subsequently the arrangement for cash rent was renewed. Randall himself declares that he supposed all the time that he had purchased the whole tract of land from the bank. In his negotiations with Ewing, he offered to sell the latter the whole body of land within the inclosure, and it was then not only understood by Randall and Ewing, but also by the plaintiff herself, that the land belonged to Randall. When Ewing visited the premises, having in contemplation the purchase of the place, the appellant pointed out to him the fence line as indicating the boundaries of the land purchased by Randall, and, after the sale to Ewing, surrendered possession voluntarily and without a murmur of protest before the expiration of the term of her lease. Randall, as we have shown, paid the taxes on all the land from the time that he received the deed from the bank to the time of the sale to Ewing. Thus it will be seen that Randall at all times not only claimed the land in dispute, but exercised all acts of ownership and dominion over it openly and notoriously. The possession of the land by the plaintiff was his possession—just as much so as if, when he first purchased the land, he had removed the plaintiff from possession and put some other tenant in possession, or had taken actual physical possession himself. It does not answer the proposition to say that the plaintiff, during the whole period of her tenancy under Randall, labored under the mistake that the land in controversy was a part of that mortgaged to the bank and conveyed to Randall. In *Woodward* v. *Faris*, 109 Cal. 17, [41 Pac. 781], it is said: "Most cases of adverse possession which have ripened into title commenced, I doubt not, in mistake. It must be either by mistake or deliberate wrong. It is through mistake only that one can honestly claim to own that which really belongs to another. But this discussion need not be prolonged, for it is only necessary to set the statute running that the party should be in possession as owner." (See, also, *Silvarer* v. *Hansen*, 77 Cal. 584, [20 Pac. 136]; *Grimm* v. *Curley*, 43 Cal. 250.)

All the elements of adverse possession are present in the case at bar. Randall, the grantor of Ewing, from the time

he purchased from the bank, was, in contemplation of law, in the continuous, open, notorious and adverse possession, claiming to hold and own the land in dispute adversely to all persons whomsoever. Counsel says that Ewing, before purchasing, should have inspected the records and by such inquiry have first determined what portion of the land had been conveyed by deed to Randall and what portion not. The same suggestion has equal force applied to the appellant. In truth, Ewing relied, no doubt, to some extent upon the representations of appellant herself as to the extent of the land owned by Randall. But for ten years she remained in possession of the land as the admitted tenant of Randall, knowing that he claimed ownership of the entire tract, never doubting such ownership, but expressly conceding and recognizing it, and yet never taking the trouble to examine the public records for herself to ascertain whether her homestead had been mortgaged and sold. While the rule of equitable estoppel might not be invoked against her under the circumstances of the case (which we do not decide), it may well be suggested that she was guilty of inexcusable negligence in suffering with passive indifference an adverse title to ripen against her before her "very eyes," and that it would hardly be just, after an innocent third party has purchased the land, under the circumstances shown here, to declare that she should be upheld, to the prejudice of such innocent party, in asserting rights lost through her own fault.

The judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.