[L. A. No. 2411.   Department One.—September 8, 1909.]

## In the Matter of the Estate of THOMAS J. HIGGINS, Deceased.

CONTEST OF WILL—UNDUE INFLUENCE—WITHDRAWAL OF ISSUE FROM JURY—IMMATERIAL IRREGULARITY.—On a trial of a contest to the probate of a will, the action of the court in withdrawing, of its own motion, an issue of undue influence from the consideration of the jury, even if irregular, will not justify a reversal, if the evi-
CLVI Cal.—17

dence on that issue was so conclusive in favor of the proponent that the court would have been compelled to set aside a verdict in favor of the contestant.

ID.—EVIDENCE FATALLY DEFECTIVE—NONSUIT WITHOUT PRIOR MOTION. —Where the evidence on that issue has been fully presented, and the contestant has totally failed to make. out a case which would support a finding in his favor, and the defect in his case is incurable, the withdrawal of the issue from the consideration of the jury, without a formal motion for nonsuit based on the insufficiency of the evidence, is without prejudice.

ID.—WHAT CONSTITUTES UNDUE INFLUENCE—EVIDENCE.—Undue influence, however used, must, in order to avoid a will, destroy the free agency of the testator at the time, and in the very act of the making of the testament. It must bear directly upon the testamentary act. Under the evidence in this case, no such undue influence was shown.

ID.—ATTORNEY AND CLIENT—PRIVILEGED COMMUNICATIONS.—An attorney, who had been requested by the proponent of the will to prepare a deed to be executed by the testator, and who, after the refusal of the testator to sign it, had a conversation with the proponent, cannot, on a contest of the will, be compelled by the contestant to state the details of such conversation.

ID.—WAIVER OF PRIVILEGE—EVIDENCE OF ENTIRE CONVERSATION—PART GIVEN OVER OBJECTION OF CLIENT.—The proponent does not waive the right to object to his attorney testifying on his redirect examination to the whole of a conversation had between them, on the ground that a part thereof had already been given in evidence, if such part had been brought out by the contestant on his direct examination over the objections of the proponent.

ID.—STATEMENT OF TESTATOR—DISAPPROVAL OF CONDUCT OF CONTESTANT.—The lapse of twenty-eight years between the time when the testator had expressed disapproval of the conduct of the contestant in marrying and the date of his will, affects the weight and not the admissibility of evidence of such disapproval.

ID.—INTENT TO KEEP PROPERTY FOR CONTESTANT—EXCLUSION OF EVIDENCE.—The rejection of evidence offered by the contestant, of a statement made by the testator several years prior to the date of his will manifesting an intent to keep certain property, afterwards conveyed to the proponent, for the benefit of the contestant, is without prejudice. Such testimony had no such direct or immediate bearing on the ultimate issues of undue influence or unsoundness of mind that its exclusion could furnish a ground for reversal.

ID.—EVIDENCE AS TO ADVANCES MADE CONTESTANT.—The refusal to permit one of the contestants, when called in rebuttal, to testify as to the amount of advances made him by the testator, is rendered immaterial, if the witness had already testified as to such advances.

ID.—CROSS-EXAMINATION—OPINION AS TO TESTATOR'S SANITY.—A trial court has a wide range of discretion in fixing the limits of cross-

examination, and it is not an abuse of such discretion to refuse to permit a witness, who had given his opinion that the testator was of sound mind, to state whether he would have put the management of a large fund into the hands of a man in the mental and physical condition of the testator.

ID.—EXPERT WITNESS—HYPOTHETICAL QUESTION—ASSUMED FACTS NOT IN EVIDENCE.—It is not error to refuse to permit a medical expert to answer a hypothetical question asked him, when there was no evidence of facts assumed as the basis of the question.

ID.—STATE OF MIND OF TESTATOR—CONSIDERATION OF PROVISIONS OF WILL.—If there be no defect of testamentary capacity, a will is not to be upset because its provisions may seem to the court or the jury to be unreasonable, unnatural, foolish, or unjust, and an instruction to that effect is proper. Such provisions, however, may be considered in determining the state of mind of the testator.

ID.—INSTRUCTIONS AS TO SOUNDNESS OF MIND.—Certain instructions given by the court on the question of the soundness of mind of the testator reviewed, and held not to deprive the contestant of any substantial right.

ID.—REFUSAL TO GIVE REQUESTED INSTRUCTION—BILL OF EXCEPTIONS— SPECIFICATIONS OF ERROR.—The refusal to give an instruction claimed to have been requested by the appellant cannot be urged as error, when the bill of exceptions fails to show that any such instruction was asked. Such showing is not made, when the only reference to the instruction is in the specifications of error at the close of the bill, reciting that the court erred "in refusing to give the jury instruction No. —— asked by the contestants, as follows: (setting forth the alleged requested instruction.)"

APPEAL from an order of the Superior Court of San Diego County refusing a new trial. N. H. Conklin, Judge.

The facts are stated in the opinion of the court.

Edwin H. Lamme, Puterbaugh & Puterbaugh, and H. E. Doolittle, for Appellants.

Wright, Schoonover & Winnek, for Respondent.

SLOSS, J.—Thomas J. Higgins, a resident of the county of San Diego, died in said county on the fifth day of September, 1907. He left as his heirs his widow, Phoebe B. Higgins, a daughter, Cornelia B. Chick, and two sons, Albert E. Higgins and Herbert R. Higgins. A paper, purporting to be the will of the decedent, was offered for probate by Herbert R. Higgins, and written opposition thereto filed by Albert E. Higgins

and Cornelia B. Chick. Two grounds of contest—unsoundness of mind and undue influence exerted by Herbert R. Higgins—were set up by the contestants. The proponent having filed an answer, the contest proceeded to trial before a jury. After all the evidence on both sides had been produced, the court, of its own motion, withdrew from the jury the issue of undue influence, submitting the single question of the competency of Thomas J. Higgins to make a last will and testament. A verdict in favor of such competency was returned and an order admitting the alleged will to probate followed. The contestants' appeal from an order denying their motion for a new trial.

Great stress is laid by the appellants upon the point that the court erred in refusing to submit to the jury the issue of undue influence. The ruling was, in effect, equivalent to an order granting a nonsuit as to one of the causes of action. The cases in which a judgment of nonsuit may be entered are set forth in section 581 of the Code of Civil Procedure, and. the court has authority to grant such judgment only in the cases specified by law. (*Hanna* v. *De Garmo,* 140 Cal. 172, [73 Pac. 830].) There is no provision in our statutes authorizing the court (except under circumstances not appearing here) to grant a nonsuit without any motion to that end by the defendant. It would seem, therefore, that the court below should not, in the absence of any request by the proponent, have taken the issue of undue influence from the jury. But, under the facts disclosed by the bill of exceptions, this error or irregularity was not such as to justify a reversal. The evidence on the issue of undue influence was so conclusive in favor of the proponent that the court would have been bound to set aside a verdict in favor of appellants. When this condition appears the court is "justified in refusing to submit the case to a jury." (*Estate of Morey,* 147 Cal. 495, [82 Pac. 57].) A plaintiff is ordinarily entitled to a motion specifying the grounds upon which a nonsuit is asked in order that he may, by amendment or further proof, have an opportunity to supply any defect suggested. Where such defect is one which might have been cured, if called to the attention of the plaintiff, it would obviously be unjust to permit a defendant to urge it for the first time in the appellate court. (*People* v. *Banyard,* 27 Cal. 474; *Miller* v. *Luco,* 80 Cal. 261, [22 Pac. 195]; *Palmer*

& Rey v. Marysville etc. Co., 90 Cal. 168, [27 Pac. 21]; Durfee v. Seale, 139 Cal. 604, [73 Pac. 435].) But this consideration has no application to a case where the evidence has been fully presented, and the plaintiff has totally failed to make out a case which would support findings in his favor. Where there is no reason to believe that any additional evidence in support of the complaint could be produced, it is difficult to see what substantial benefit would be derived from a formal motion for nonsuit, based on the insufficiency of the evidence. Such is the situation here. The defect in contestants' case is incurable, and the court will not order a reversal for the mere purpose of having submitted to the jury an issue which could not be decided in favor of contestants. "Granting," as was said in Estate of Morey, 147 Cal. 495, [82 Pac. 57], "that the course pursued in this case was irregular, it does not follow that it is fatal to the judgment, even on appeal."

It is not necessary to set out the evidence at length in order to support our conclusion that a verdict finding that the will had been obtained by undue influence could not have been sustained. The contestants showed that for some months prior to his death the testator, a man of advanced years, had reposed great confidence in his son Herbert, the respondent, and that the latter had from time to time, importuned his father to settle his affairs. The deceased was suffering from physical ailments, and, according to the testimony offered by contestants, had become greatly weakened mentally. The will was executed on the day preceding the testator's death. Said will, after recognizing the right of the widow to one half of the estate (the whole being community property) and bequeathing to her the household furniture, gave to the daughter, Mrs. Chick, one sixth, to Albert E. Higgins, two sixths, and to Herbert R. Higgins, three sixths of the residue. It also confirmed a deed, theretofore made by the testator and his wife, conveying a valuable lot to Herbert R. Higgins. In all the testimony of contestants there was nothing to show the exercise of any actual pressure or influence by the proponent, unless it be found in his efforts, some months prior to the execution of the will, to induce his father to dispose of all his property. But his importunities in this direction were unsuccessful. They were uniformly resisted by the testator. Giving to contestants the full force of the presumption of

undue influence arising from the confidential relations between
the testator and the proponent, coupled with activity on the
part of the latter in the preparation of the will, (*In re Mc-.
Devitt,* 95 Cal. 17, 33, [30 Pac. 101]; *Coghill* v. *Kennedy,* 119
Ala. 641, [24 South. 459]), this presumption was fully met
and overthrown by the uncontradicted evidence showing the
actual circumstances surrounding the preparation and execu-
tion of the will. (*Estate of Morey,* 147 Cal. 495, [82 Pac.
57].) It was shown that the testator, before executing his
will, had consulted with an attorney, who visited him for that
purpose. At this interview no member of his family, except
his wife, was present. The nature and extent of a surviving
wife's interest in community property was explained to the
testator, who said that one half of the estate (all of which he
declared to be community property) would be sufficient pro-
vision for Mrs. Higgins. Concerning the disposition of the
other half, he said he did not desire to give his daughter an
equal share. He first spoke of giving her fifteen hundred dol-
lars, but before the close of the interview mentioned the sum
of twenty-five hundred dollars. He stated that he did not
want Mr. Chick, his daughter's husband, to handle any con-
siderable amount of his property. In the afternoon of the
same day the attorney, accompanied by his son, returned with
a draft of the proposed will. In the absence of the proponent
the testator was asked for his decision regarding the gift to
his daughter. He expressed a thought of raising it to thirty-
five hundred dollars. The attorney then suggested a division
into shares instead of a cash legacy. This, after some con-
sideration, was approved by the testator, and he fixed upon
the proportions of one sixth to Mrs. Chick, two sixths to Albert
and three sixths to Herbert. Blanks which had been left in
the draft were filled accordingly and the will was executed.
Its other provisions, such as appointment of executor, etc.,
followed the directions of the testator. In the face of this
showing, which we have set forth in mere outline, there is no
basis for the claim that the will was procured to be made by
the undue influence of the proponent. "Undue influence,
however used, must in order to avoid a will, destroy the free
agency of the testator at the time, and in the very act of the
making of the testament. It must bear directly upon the
testamentary act." (*Estate of Donovan,* 140 Cal. 143, [73

Pac. 1081] ; *Estate of McDevitt,* 95 Cal. 17, [30 Pac. 101] ;
*Estate of Langford,* 108 Cal. 608, [41 Pac. 701] ; *Estate of
Calkins,* 112 Cal. 296, [44 Pac. 577] ; *In re Wilson,* 117 Cal.
262, .[49 Pac. 172, 711].)   The proof above recited amounted
to a demonstration that in determining upon the testamentary
disposition of his property the testator was forming his own
conclusions and expressing his own intentions.

On the issue of unsoundness of mind there was testimony in
support of contestants' position, but there is no contention
that there was not ample evidence the other way to support
the verdict in favor of the testator's competency.

Objection is made to certain rulings on the admissibility of
evidence.

Will H. Holcomb, an attorney at law, testified that he had
been requested by the proponent to draw a deed to be exe-
cuted by the decedent, conveying all of the latter's property
to said proponent.   He prepared the paper, and took it to
the house of the testator, who refused to sign it.   On the
following day Holcomb had another conversation with the
proponent.   The testimony tended to show that the relation
of attorney and client existed between Holcomb and the pro-
ponent, and the court did not therefore err in refusing to
permit the witness to state the details of the last mentioned
conversation.   (Code Civ. Proc., sec. 1881, subd. 2.)   The
same may be said of the question asked Holcomb on redirect
examination regarding the "balance" of the first conversation
between himself and proponent.   Such part of this conversa-
tion as was shown had been brought out by contestants, over
the proponent's objection.   There was, therefore, no waiver of
the point of privileged communication.

The contestant Cornelia B. Chick had been married to
Martinez Chick in March, 1879.   The proponent was permitted
to show that, at that time, the testator had expressed his
disapproval of the marriage.   The occurrence was so remote
in point of time that it could throw but little light on the
question of the feelings between father and daughter at the
date of the will.   The lapse of time, however, affected the
weight, rather than the admissibility of the testimony.   On
similar reasoning, the court might well have admitted, in-
stead of excluding, as it did, the testimony of one Gordon
(offered by contestants) to the effect that the decedent had

stated, some three or four or five years before, that he intended
to keep certain property, afterward conveyed to respondent,
for his daughter and his son Albert. But this testimony had
no such direct and immediate bearing on any of the ultimate
issues that its exclusion could furnish a ground for reversal.
A different ruling could not have affected the result.

Albert E. Higgins, one of the contestants, was called in re-
buttal, and asked what advances had been made to him by
his father. Objection to the question was sustained. It may
be conceded that the state of the case was such as to make
the inquiry material. But the ruling was not prejudicial,
since the witness, when called at an earlier stage of the trial
had already testified that all the advances he had received
from his father amounted to about twenty-three hundred dol-
lars. Repetition would have added no force to this.

In each of two instances a witness, duly qualified, having
given his opinion that the testator was of sound mind, was
asked by contestants, on cross-examination, whether he would
put the management and disposition of fifty thousand dollars
worth of property into the hands of a man, in the mental and
physical condition of the testator. An objection was sustained.
It may be said that the inquiry was proper cross-examination
for the purpose of testing the value of the opinion given by
the witness. Even so, we think the ruling did not constitute
prejudicial error. The trial court has a wide range of dis-
cretion in fixing the limits of cross-examination (*Brumagin* v.
*Bradshaw*, 39 Cal. 24; *Silvarer* v. *Hansen*, 77 Cal. 579, [20
Pac. 136]), and the record does not show any abuse of dis-
cretion in the ruling complained of. The contestants were
allowed a reasonably free opportunity to develop by cross-
examination any consideration affecting the reliability of the
opinion given by the witness.

Dr. Hulbert was called by contestants as an expert witness.
An objection to one of the hypothetical questions asked him
was properly sustained. There was no evidence of facts as-
sumed as the basis of the question.

The only remaining points are those relating to instructions.
In instruction 8 the court told the jury that "every one has
the right to dispose of his property according to his own de-
sires, and if there is no defect of testamentary capacity, the
law must give effect to his will, irrespective of its provisions,

or of his reasons or motives for making such disposition; and the jury are not at liberty to consider the character of its provisions, but are solely to determine whether it was his 'will." The objection raised to this instruction by appellants is that it removes from the consideration of the jury the terms of the will itself. No doubt the nature of the testamentary provisions may be such as to indicate, in connection with other evidence, a want of capacity to make a will. And where the will makes an irrational or unnatural disposition of property, this is a circumstance to be considered in determining the state of mind of the testator. But, if there be no defect of testamentary capacity, a will is not to be upset because its provisions may seem to the court or the jury to be unreasonable, unnatural, foolish, or unjust. (*In re Wilson*, 117 Cal. 262, 277, [49 Pac. 172, 711]; *In re McDevitt*, 95 Cal. 33, [30 Pac. 101].) We think the instruction complained of went no further than to declare the rule as we have just stated it. The declaration that the jury is not to consider the character of the provisions of the will, and the preceding statements that the law must give effect to the will, "irrespective of its provisions, or of his reasons or motives for making such disposition," are all alike qualified by the preliminary clause, "if there is no defect of testamentary capacity." Such, apparently, was the interpretation given to this very instruction when it was upheld by this court in *Estate of Nelson*, 132 Cal. 182, [64 Pac. 294].

We see no error in the other instructions criticized. In telling the jury that "if there still remains to him (the testator) a sufficient mentality to recognize those who are the objects of his bounty or should be, and to recollect the property that he is to bestow, that is his will he is making, and the courts and jury have no right to disturb it," and that "if they (testators) have what is known as testamentary capacity, if they can recognize to whom their bounty should go, or recognize the fact of to whom they want it to go, and the fact that they have property that they wish to dispose of, it is a sound mind sufficient for them to make a testament," the court was not undertaking to give a complete definition of testamentary capacity, but was merely directing the attention of the jury to the established rule that ideal perfection of mentality regarding all subjects is not required,

but only such degree of understanding as will enable the testator to act rationally in the matter of making a testamentary disposition of his property. It may be that the language above quoted does not fulfill all the requirements of technical accuracy, but, when read in connection with other instructions defining a sound mind, it is apparent that the jury could not have been misled to the prejudice of the appellants. Among other things, the court told the jury that "a sound mind is one that is capable of rationally thinking, reasoning, acting and determining for himself, or in other words, a person of sound and disposing mind, who is in possession of the natural mental faculties of mind free from delusions and capable of rationally thinking and acting for himself." Certainly the instructions, taken together, imposed upon the proponent as severe a test as could reasonably be asked by respondent. We do not suggest that these instructions, in the precise form in which they were given, should be taken as models for future cases, but are satisfied that they did not deprive the appellants of any substantial right.

Of the instructions said to have been requested by contestants and refused, it is sufficient to say that the bill of exceptions fails to show that any instructions were so requested or refused. The only reference to them is in the specifications of error at the close of the bill of exceptions. Among such specifications are several to the effect that the court erred "in refusing to give to the jury instruction No. ——, asked by the contestants, as follows: (setting forth the alleged requested instruction)." The assignments of error, unsupported by the substantive part of the bill, are not evidence that the alleged requests were made or denied. (*Goldman* v. *Bashore*, 80 Cal. 146, [22 Pac. 82]; *Ferrier* v. *Ferrier*, 64 Cal. 23, [27 Pac. 960].)

The order denying a new trial is affirmed.

Angellotti, J., and Shaw, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order refusing a hearing in Bank.