[Sac. No. 3362. In Bank.—December 5, 1923.]

In the Matter of the Estate of GLENN G. RELPH, Deceased.

[1] WILLS—CONTEST—TESTIMONY OF SUBSCRIBING WITNESS—IMPEACHMENT—EVIDENCE.—In a will contest, where a subscribing witness to the will, while on the stand as a witness for the contestants in the contest proceedings, testified on cross-examination by the contestants as to testimony given by him on the "preliminary proof" of the will that he had not subsequent to the death of the testator made statements at certain times and places and in the presence of certain persons indicating that the latter had not left a will and that in his opinion the testator was not of sound mind, the exclusion of testimony of others offered by the contestants to show that the subscribing witness had made the statements was proper.

[2] ID. — EVIDENCE — DECLARATIONS OF SUBSCRIBING WITNESS. — The subscribing witness being in no sense a party to the proceeding or in privity with any party thereto, his declarations or admissions made out of court and out of the presence of the parties had no value as original evidence; they would be pure hearsay and inadmissible for any purpose, except to impeach him as a witness.

[3] ID.—IMPEACHMENT—SURPRISE.—A witness cannot be impeached as to his veracity or reliability by the party who calls him, except upon a showing of surprise.

[4] ID.—WITNESS FOR CONTESTANTS.—In such contest, the subscribing witness in denying making the statements claimed to have been made by him was the witness of the contestants, and not of the proponent, where he had not been called as a witness for the proponent in the proceeding upon the contest of the will, the issues in which were to be tried by the jury, but solely upon the proceeding for the probate of the will, the issues upon which were addressed solely to the court.

[5] ID. — CONTEST BEFORE PROBATE — SEPARATE PROCEEDINGS.—When a will is contested before probate there are two separate and distinct proceedings pending before the court. One is the petition for the probate of the will; the other is the contest of the probate of the will.

[6] ID.—PROCEEDING FOR PROBATE OF WILL—NATURE OF—PARTIES.— The petition for the probate of a will is distinctly a proceeding *in rem,* and while all persons interested in the estate are in a sense parties defendant thereto, there are no defendants in the sense of active parties litigant in this proceeding. It is in a sense an *ex parte* proceeding, in which the burden rests upon the petitioner to prove all the material allegations of his petition, whether denied or not, and the responsibility is upon the court to guard and protect the interests of all persons interested therein.

[7] ID.—PROCEEDING FOR CONTEST OF WILL — NATURE OF — PARTIES — ISSUES.—The contest of a will, while a proceeding *in rem,* is at the same time an adversary proceeding, the parties to which consist, on the one hand, of those persons interested in the estate who have appeared and filed written grounds of opposition to the probate of the will (commonly referred to as the contest), and, on the other hand, those persons interested in the will who have appeared and filed written answer thereto. The only issues of fact involved therein are those which are framed by the allegations of the contest and the denials of the answer; and as to those issues the burden of proof rests upon the contestants, and the proponents are not called upon to submit any evidence until the contestants shall have produced some evidence legally sufficient to support their allegations upon one or more of those issues.

[8] ID.—PROCEEDING FOR PROBATE OF WILL—ISSUES FOR COURT.—In the proceeding for the probate of the will, as distinguished from the proceedings upon the contest, the evidence and the issues of fact are solely for the consideration and determination of the court, even though a jury may have been demanded and impaneled for the trial of the issues upon the contest.

[9] ID.—RIGHT OF CONTESTANTS TO APPEAR.—The contestants are not parties to the proceeding for the probate of the will and have no right to appear therein, but the trial court, having itself the right to cross-examine the witnesses produced therein, may, in the exercise of its discretion, permit counsel for contestants so to

do; but when such permission is granted it is as a matter of grace and not in recognition of a right possessed by the contestants.

[10] ID.—ORDER OF PROOF—DISCRETION.—The matter of the order of proof rests in the sound discretion of the trial court and it may, in the exercise of that discretion, direct the proofs upon the petition for the probate of the will (commonly referred to as the preliminary proof) to be made either before or after the hearing of the issues upon the contest; but whether the hearing upon the so-called preliminary proof be had before or after the hearing upon the contest, the evidence therein is addressed solely to the trial court and the contestants are not parties thereto.

[11] ID.—WILL CONTEST—PETITIONER FOR PROBATE NOT NECESSARY PARTY.—In the proceeding upon the contest of the will the petitioner for the probate thereof is not even a necessary party litigant thereto.

[12] ID. — EVIDENCE — IMPEACHMENT—ABSENCE OF PREJUDICE.—In a contest of a will, assuming that the contestants were entitled to impeach the testimony of a subscribing witness given on the preliminary proof of the will as to its due execution and the soundness of the testator's mind, the refusal of the trial court to permit such impeachment did not prejudice the contestants where, also assuming this testimony to have been completely destroyed by the impeachment, if permitted, the presumption of sanity still remained in the absence of evidence which was legally sufficient to sustain a finding of mental incompetence, and further assuming the testimony of the other subscribing witness to the effect that the will had been duly executed also to have been completely eliminated from the case, the jury would have been compelled to find against the contestants upon the issue of nonexecution for want of production by them of evidence which tended affirmatively to prove such nonexecution.

[13] ID.—EXECUTION OF WILL—EVIDENCE.—In this will contest, the evidence, upon the issue of the nonexecution of the will, showed without conflict that the will was executed in full compliance with all the essential requirements of section 1276 of the Civil Code.

[14] ID.—INSANITY — EVIDENCE — PRESUMPTION.—In such contest, the evidence was insufficient to overcome the presumption of sanity with respect to the testator's condition at the time of the execution of the will.

[15] ID. — EVIDENCE — INTIMATE ACQUAINTANCE OF TESTATOR—REJECTION OF TESTIMONY—DISCRETION.—In such contest, the rejection of the testimony of a nurse, who attended the testator during part of his last illness, as to his alleged unsoundness of mind was not an abuse of discretion, where her testimony could have been admissible only upon the theory that she was an "intimate acquaintance" of the testator, and it was shown that she had never

met nor seen the testator until the day before the will was executed.

[16] ID.—EVIDENCE—INTIMATE ACQUAINTANCE — DISCRETION — APPEAL. The determination of the question whether or not a witness has been shown to be an "intimate acquaintance" is committed in the first instance to the sound discretion of the trial court, and it is only upon a clear showing of abuse of such discretion that its ruling thereon will be disturbed on appeal.

[17] ID.—UNDUE INFLUENCE—EVIDENCE.—In such contest, there was an utter lack of any proof of pressure which overpowered the mind of the testator or overcame his volition at the very time the will was made.

[18] ID.—UNDUE INFLUENCE—EVIDENCE.—The rule that "where one who unduly profits by the will as a beneficiary thereunder sustains a confidential relation to the testator, and has actually participated in procuring the execution of the will, the burden is on him to show that the will was not induced by coercion or fraud," and that "a presumption of undue influence arises from proof of the existence of a confidential relation between the testator and such a beneficiary, coupled with activity on the part of the latter in the preparation of the will," has no application to a case wherein the beneficiary, not only was not shown to have been active in the preparation of the will, but was not shown to have participated in any way in procuring its execution.

[19] ID.—DATE OF EXECUTION OF WILL—REJECTION OF EVIDENCE—ABSENCE OF PREJUDICE.—In such contest, although it was error for the trial court to exclude testimony proffered by the contestants to show that the will had been executed on a date subsequent to that testified to by a subscribing witness, nevertheless contestants were not injured by said ruling where the evidence showed that the mental and physical condition of the testator was substantially the same on both dates, and there was no evidence of any change in this respect.

APPEAL from a judgment of the Superior Court of San Joaquin County. J. A. Plummer, Judge. Affirmed.

The facts are stated in the opinion of the court.

Arthur L. Levinsky and Robert L. Beardslee for Appellants.

J. B. Curtin for Respondent.

18. Evidentiary force of circumstances that one benefited by a will was the draftsman thereof, or was active in procuring its execution, note, 28 L. R. A. (N. S.) 270.

MYERS, J.—Contestants appeal herein from a judgment admitting a will to probate, following a directed verdict. Glenn G. Relph, the testator, died on the twenty-first day of December, 1919, at the age of twenty years, leaving as his next of kin certain uncles, aunts, and cousins, and leaving a document purporting to be his last will and testament, which bore date December 17, 1919, and is the instrument here in controversy. By it he bequeathed his entire estate to Miss Ila Blackwell, who was described therein as his affianced wife, and who was named therein as executrix without bonds. She having offered the will for probate, written grounds of opposition thereto were filed by contestants herein, uncles of the testator, upon the grounds that the same was not executed, published, acknowledged, or witnessed as required by law; that the testator was not of sound mind at the time of the execution thereof, and that the will was the product of the undue influence of said Ila Blackwell and John A. Marconi, one of the subscribing witnesses thereto. The proponent having filed her written answer to the opposition, wherein she denied substantially all of the material allegations thereof, the matter finally came on for trial with the result above noted. The grounds urged upon this appeal are errors of law in the admission and rejection of evidence, and that the trial court erred in directing the verdict, for the reason that the evidence was sufficient to sustain each of the grounds of contest.

The claimed errors in the admission and exclusion of evidence are more than sixty in number, but it is not necessary to here consider any of these which did not operate to prevent contestants from introducing additional evidence. The judgment appealed from being predicated upon a directed verdict, it is manifest that if there was evidence legally sufficient to support the material allegations of the contest upon any one or more of the issues presented, the case must be reversed regardless of the commission of errors in the admission of evidence. On the other hand, if the evidence was legally insufficient to support the allegations of the contest upon any of those issues, it follows that all errors which did not operate to prevent contestants from introducing additional evidence thereon would be wholly immaterial.

The great majority of the claimed errors involve the same point, to wit, the contention that the trial court erred in

excluding evidence offered by contestants for the purpose of impeaching the witness John A. Marconi, which evidence was clearly incompetent for any other purpose whatsoever. This is the point chiefly relied upon by contestants upon this appeal, and an outline of the history of the trial is necessary to its clear understanding.

The case came on for trial, and a jury having been impaneled and sworn, the trial judge stated that he would hear the preliminary proof as to the document claimed to be the last will and testament, and that he would himself examine the witnesses upon said preliminary proof. Thereupon, Ila Blackwell, proponent, was sworn and testified as to the death of the deceased, the estate left by him, and other jurisdictional facts. John A. Marconi and Mary Marconi, subscribing witnesses to the will, were sworn and each testified to the circumstances of the execution of the will, all in response to questions from the trial judge. During the examination of these witnesses the court stated in answer to questions of attorney for contestants that the contestants were not bound by the testimony of the aforesaid witnesses, as it was only making preliminary proof. At the conclusion of their testimony the trial judge said: "The court will hold the preliminary proof will show the *prima facie* execution of the document, so that you may go ahead with your contest immediately after the opening of court, Mr. Levinsky [counsel for contestants] at 1:30." Thereupon, at the reconvening of court contestants "went forward" and called John A. Marconi as their witness and he was again sworn as a witness and examined by them as to the circumstances of his relations with the testator and the preparation and execution of the will, after which he was cross-examined by proponent upon the same subjects.

After certain other witnesses had been called and examined by contestants they recalled Marconi and endeavored to prove by him that after the death of the testator he had made statements in the presence of certain of the contestants and at a designated time and place to the effect that the testator had not left a will. This was excluded by the trial court upon objection of the proponent. Counsel for contestants then asked for a continuance on the ground that certain of their witnesses were not present, whereupon the court said to him: "You have the right to cross-examine

this witness as to the testimony which was introduced this morning. If you want to cross-examine on that you may do so.'' Counsel for contestants then proceeded to cross-examine Marconi upon the testimony which he had given upon the ''preliminary proof,'' in the course of which the trial court stated, in response to an inquiry from counsel for proponent, ''This cross-examination is permitted simply upon preliminary testimony which was taken by the court this morning.'' Counsel for proponent then requested the court to instruct the jurors whether or not they were to consider it, to which the court replied, ''I have stated it is for the court, not for the jury.'' The cross-examination then proceeded and in the course of it contestants were permitted, over the objection of proponent, to ask the witness if he had not subsequent to the death of the testator made statements indicating that the latter had not left a will and if he had not made statements on the evening of the day when the will is claimed to have been executed, indicating that in his opinion the testator at that time was not of sound mind. The times, places, and persons present, with respect to each of the claimed declarations, were designated in the questions. He answered each of them in the negative. Thereafter contestants called various witnesses, by whom they sought to prove that the witness Marconi had made the declarations at the times and places indicated in the questions which had been put to him. This proof was excluded by the court upon the objection of proponent. In answer to a question from counsel for contestants for an explanation of his ruling, the trial judge said: ''There is no foundation laid for it, to start with. Couldn't be any foundation laid, under the circumstances of the case, at the present time. I will state it, because you don't seem to comprehend the ruling of the court. If, when it comes to the proponents' side of the case, and the proponents put Mr. Marconi on the stand, and he testifies, then you can ask him if he didn't make such and such declaration, then bring back the witness. That state of the case has not been reached.'' [1] This ruling was clearly correct: [2] The witness Marconi was in no sense a party to the proceeding or in privity with any party thereto. His declarations or admissions made out of court and out of the presence of the parties would have no value as original evidence. They

would be pure hearsay and inadmissible for any purpose, except to impeach him as a witness. If it had been shown that the witness Marconi had stated in the presence of various persons that "Glenn Relph was utterly insane during that entire week of his last sickness," this would not have been competent evidence as to the testator's mental condition. It could not have been considered by the jurors as tending to prove anything whatever upon that question. It could have been considered by them only as reflecting upon the veracity and reliability of Marconi as a witness. (*Thiele* v. *Newman*, 116 Cal. 571 [48 Pac. 713].) **[3]** But a witness cannot be thus impeached by the party who calls him, except upon a showing of surprise, which was not made here. (*People* v. *Johnson*, 131 Cal. 511 [63 Pac. 842]; *People* v. *Creeks*, 141 Cal. 529 [75 Pac. 101]; *Bollinger* v. *Bollinger*, 154 Cal. 695 [99 Pac. 196].) **[4]** Appellants invoke the rule that a witness is generally regarded as the witness of the party first calling him. Applying that rule to the situation herein, it still follows that Marconi was the witness of contestants in this proceeding. He had not been called as a witness for proponent in the proceeding upon the contest of the will, the issues in which were to be tried by the jury, but solely upon the proceeding for the probate of the will, the issues upon which were addressed solely to the court.

**[5]** When a will is contested before probate there are two separate and distinct proceedings pending before the court. One is the petition for the probate of the will; the other is the contest of the probate of the will. (*Estate of Latour*, 140 Cal. 414 [73 Pac. 1070, 74 Pac. 441]; *Estate of McDermott*, 148 Cal. 43, 49 [82 Pac. 842]; *Estate of Cullberg*, 169 Cal. 365 [146 Pac. 888].) **[6]** The petition for the probate of a will is distinctly a proceeding *in rem*. (*Estate of Baker*, 170 Cal. 578, 585 [150 Pac. 989]; *Estate of Allen*, 176 Cal. 632 [169 Pac. 364].) The petitioner or proponent appears therein as plaintiff and tenders to all of the world all of the issues of fact relevant to the ultimate question of the validity of the will. While all persons interested in the estate are in a sense parties defendant thereto, there are no defendants in the sense of active parties litigant in this proceeding. It is in a sense an *ex parte* proceeding, in which the burden rests upon the petitioner to prove

all the material allegations of his petition, whether denied
or not, and the responsibility is upon the court to guard
and protect the interests of all persons interested therein.
[7] The contest of a will, on the other hand, while a pro-
ceeding *in rem,* is at the same time an adversary proceeding,
the parties to which consist, on the one hand, of those per-
sons interested in the estate who have appeared and filed
written grounds of opposition to the probate of the will (com-
monly referred to as the contest) ; and, on the other hand,
those persons interested in the will who have appeared and
filed written answer thereto. The only issues of fact in-
volved therein are those which are framed by the allega-
tions of the contest and the denials of the answer. (*Estate
of Gregory,* 133 Cal. 131, 136 [65 Pac. 315].) As to those
issues the burden of proof rests upon the contestants (*Estate
of Latour, supra; Estate of Dolbeer,* 149 Cal. 227 [9 Ann.
Cas. 795, 86 Pac. 695] ; *Estate of Cullberg,* 169 Cal. 365 [146
Pac. 888]), and the proponents are not called upon to sub-
mit any evidence until the contestants shall have produced
some evidence legally sufficient to support their allegations
upon one or more of those issues. If the contestants fail to
produce such evidence, the decision of the contest must be
against them, even though the proponents produce no evi-
dence therein whatsoever. (*Estate of Latour, supra,* p. 421.)
[8] In the proceeding for the probate of the will, as dis-
tinguished from the proceedings upon the contest, the evi-
dence and the issues of fact are solely for the consideration
and determination of the court, even though a jury may
have been demanded and impaneled for the trial of the
issues upon the contest. (*Estate of Latour, supra; Estate
of McDermott, supra.*) [9] The contestants are not par-
ties to this proceeding and have no right to appear therein
(*Estate of Latour, supra*), but the trial court, having itself
the right to cross-examine the witnesses produced therein,
may, in the exercise of its discretion, permit counsel for con-
testants so to do. (*Estate of Cullberg, supra.*) But when
such permission is granted it is as a matter of grace and not
in recognition of a right possessed by contestants. [10] The
matter of the order of proof rests in the sound discretion
of the trial court and it may, in the exercise of that discre-
tion, direct the proofs upon the petition for the probate of
the will (commonly referred to as the preliminary proof)

to be made either before or after the hearing of the issues upon the contest. (*Estate of Smith,* 176 Cal. 729 [171 Pac. 289].) But whether the hearing upon the so-called preliminary proof be had before or after the hearing upon the contest, the evidence therein is addressed solely to the trial court and the contestants are not parties thereto. The trial court herein followed the procedure recommended by Mr. Justice Shaw in the opinion upon application for rehearing in *Estate of Latour, supra.* [11] In the proceeding upon the contest of the will the petitioner for the probate thereof is not even a necessary party litigant thereto. It sometimes happens that after he has filed his petition for the probate of the will and written grounds of opposition thereto have been filed, he elects to leave the defense of the will to other persons, and accordingly files no answer to the contest, and, therefore, never becomes a party litigant therein.

It doubtless would have been better practice for the trial court to have heard the evidence adduced upon the preliminary proof herein in the absence of the jury. This would have eliminated the possibility of any confusion in the mind of counsel or jurors as to what evidence was to be considered by the latter, but no objection was made on behalf of any party to the course which was followed by the court herein. Counsel for all parties acquiesced therein, at least tacitly, and the trial judge made it plain by repeated declarations that the evidence adduced upon the preliminary proof was for the consideration of the court alone and not for the jury.

[12] But even if it be assumed that the testimony of the witnesses upon the preliminary proof was to be considered by the jury as a part of the evidence directed to the issues upon the contest and that the contestants were, therefore, entitled to impeach the witness Marconi, nevertheless they were not prejudiced herein by the action of the court in denying them that right. If they had succeeded in effectually and completely impeaching the witness Marconi the sole effect thereof would have been to eliminate his testimony from the consideration of the jury—to erase it all, as it were. It would not have had the effect of supplying any affirmative testimony in support of the allegations of their contest. Marconi had testified upon the preliminary proof in response to a question by the court that in his opinion the testator

was of sound mind at the time of the execution of the will. Assume this testimony to have been completely destroyed by the impeachment of this witness and we still have left the presumption of sanity which would compel a finding against contestants upon this issue, unless they produced some evidence which was legally sufficient to sustain a finding of mental incompetency. Marconi also testified to the circumstances of the execution of the will. Assume that testimony also to have been completely wiped out by his impeachment and we have left the testimony of Mary Marconi to the effect that the will had been executed in accordance with all of the statutory requirements. Assume her testimony also to have been completely eliminated from the case and we are still faced by the fact that the jury would have been compelled to find against the contestants upon the issue of nonexecution, unless they produced some evidence which tended affirmatively to prove such nonexecution. (*Estate of Latour, supra.*)

This brings us to a consideration of appellants' contention that the court erred in directing the verdict, for the reason that the evidence was sufficient to support findings in their favor upon the issues presented by the contest. With respect to the issue of nonexecution, contestants' claim is thus stated in their brief: ''The document is not the last will and testament of Glenn G. Relph, deceased, in that he did not request or direct the preparation thereof. Neither did he request or direct the contents thereof. Neither did he know the contents thereof at the time of the alleged execution thereof.'' As we gather from their argument, this claim is chiefly predicated upon the circumstances that the provisions in the will nominating Miss Blackwell as executrix thereof, with power to sell the property of the estate, and directing that she be not required to furnish bonds, were not requested or suggested by the testator, or by anyone in his behalf, but were inserted therein by the attorney who drew the will, of his own motion. It does appear, however, that the will as drafted by the attorney was twice read by the testator before the execution thereof, and that its provisions apparently met with his complete approval. With respect to the dispositive provisions of the will, it further appears that they were in full accord with the testator's expressed desire ''to see Ila get what I have if anything

happens to me.'' **[13]** The testimony shows, without conflict, that the will was executed in full compliance with all the essential requirements of section 1276 of the Civil Code. (See *Estate of Cullberg, supra; Estate of Dow,* 181 Cal. 106 [183 Pac. 794].)

**[14]** With respect to the issue of unsoundness of mind, the utmost that can be said to be established by the evidence in support of contestants' claim may be summed up as follows: That the testator became seriously ill on Monday, the 15th of December, and was then taken to a hospital for treatment; that he was then suffering great pain, and his body, hands, and face were badly swollen; that a day or two later one eye was swollen shut and the other nearly so; that on the night of Tuesday, the 16th, he was very restless, tossing around and talking quite at random; that on Wednesday evening, December 17th, he was very sick, suffering great pain, breathing very hard, spoke in a choked sort of voice, complained of the heat when it was not warm, and at times during that evening he spoke irrationally and at other times he spoke rationally; that on Thursday evening he was very sick, was groaning and vomiting and trying to mumble to himself, and when spoken to did not reply; that at times during the nights of Wednesday and Thursday he wanted to get up and said he wanted to go get himself something to eat, and wanted to go down town and buy him some clothes, and called to his horses and called them by name; that on Friday during the daytime he seemed to be in a great deal of pain, was groaning and was very restless and talked irrationally. There is no evidence whatever of any mental weakness or delirium during the daytime on either Wednesday, the 17th, or Thursday, the 18th, and the will is claimed to have been executed about noon on the 17th. It is clear that the evidence was wholly insufficient to overcome the presumption of sanity with respect to the testator's condition at that time. (See *In re Redfield,* 116 Cal. 637 [48 Pac. 794]; *Estate of Casarotti,* 184 Cal. 73 [192 Pac. 1085]; *In re Wilson,* 117 Cal. 262 [49 Pac. 172]; *Estate of Carithers,* 156 Cal. 422 [105 Pac. 127].)

**[15]** It is of some significance that several uncles and an aunt of the testator who testified at the trial (among them the two contestants), were shown to have been with the testator repeatedly during his last illness, yet none of them

testified he was of unsound mind. The only witness for contestants of whom this question was asked was Miss Joens, a nurse who attended testator during part of his last illness. Proponent's objection thereto upon the ground that no foundation had been laid and that the witness was not competent was sustained, and this ruling is complained of as error. No attempt was made to qualify her as an expert upon this subject, and her testimony could have been admissible only upon the theory that she was an "intimate acquaintance" of the testator. (Code Civ. Proc., sec. 1870, subd. 10.) It was shown that she had never met nor seen the testator until the afternoon of December 16th, the day before the will was executed. **[16]** The determination of the question whether or not a witness has been shown to be an "intimate acquaintance" is committed in the first instance to the sound discretion of the trial court. It is only upon a clear showing of abuse of such discretion that its ruling thereon will be disturbed on appeal. (*In re Wax,* 106 Cal. 343, 351 [39 Pac. 624]; *People* v. *Suesser,* 142 Cal. 354, 360 [75 Pac. 1093]; *Estate of McKenna,* 143 Cal. 580, 584 [77 Pac. 461].) No such showing is here made. We do not find the slightest ground for concluding that the trial court abused its discretion herein. An utter stranger does not ordinarily become the intimate acquaintance of another within less than twenty-four hours after their first meeting. There is nothing in the case of *Estate of Budan,* 156 Cal. 230 [104 Pac. 442], which conflicts with this conclusion. There a nurse who had been in attendance upon the testator during every hour of the day over a period of three days, and who had talked with him daily on various subjects, was permitted by the trial court to testify as an intimate acquaintance. All that this court decided upon that point was that such ruling could not be said to be a clear abuse of its discretion by the trial court. We are not called upon to here determine whether or not the trial court would have been guilty of an abuse of discretion if it had admitted this testimony.

As to the issue of undue influence, the evidence showed that John A. Marconi, one of the witnesses to the will, was a half-brother of Miss Blackwell, the sole beneficiary; that he had known the testator between six and seven years; that their relations were very friendly and that the testator was

in the habit of coming to him for advice; that on Monday, December 16th, the testator said to him: "John, do you know what you done for me when I went to the army? Do you know what I gave you when I went to the army?" to which the witness answered, "yes," and the testator said, "Will you do the same thing for me again?" to which the witness answered in the affirmative, and the testator said, "I am awfully bad off. You may not think it, but I am. Something may happen to me. I dreamed of my mother last night. I had a talk with her. I suppose you know the only one that is near to me is Ila, and in case anything happens to me I want you to prepare something to help me out in this matter to see Ila gets what I have if anything happens to me." Upon cross-examination the witness explained the reference to "what I gave you when I went to the army" by stating that in 1918, shortly before testator enlisted in the army, he had delivered to the witness a holographic will whereby he bequeathed all of his property to Ila Blackwell; that the witness had kept the same until testator's return from the army, when the witness had returned it to the testator and had not seen it since. That testimony was admitted over contestants' objection that it was "incompetent, irrelevant, and immaterial, not cross-examination." That it was cross-examination is clearly apparent. That it was both relevant and material is equally clear. If it be conceded that the court should not have received secondary evidence of the contents of the holographic will without first requiring proof of a search therefor and that the same could not be found, the answer is that contestants did not object upon this ground, and an objection which might have been cured had it been presented at the trial will not be entertained when made for the first time upon appeal. The witness Marconi then went to Stockton, employed a lawyer and instructed him to prepare a will for the testator bequeathing the entire estate to Miss Blackwell, which was done, and the witness paid the attorney for his services and returned to the hospital and delivered the draft of the will to the testator, who then read it and again on the following day at noon reread it and executed it. When the will had been signed and executed the testator said to the two witnesses, "Now, Mary and John, can I depend" or "will you see that

Ila gets all that I have?'' The beneficiary, Miss Blackwell,. was not present at any time during the execution of the will.

Respondent calls our attention in this connection to the fact that the only undue influence pleaded herein is found in the allegations that the respondent and Marconi procured the execution of the will by making certain alleged false representations to the testator, and that there is not a scintilla of evidence to support those allegations, and she invokes the rule that where fraud or undue influence is relied upon as a ground for contest,. the facts constituting it must be alleged, and contestants can prevail only upon proof of such facts. (*Estate of Gharky,* 57 Cal. 274, 279; *Estate of Kilborn,* 158 Cal. 593 [112 Pac. 52]; *Estate of Kile,* 72 Cal. 131, 133 [13 Pac. 320].) But it is not necessary to apply this rule in order to affirm the action of the trial court upon this issue. **[17]** There was an utter lack of any proof of pressure which overpowered the mind of the testator or overcame his volition at the very time the will was made. (*Estate of Gleason,* 164 Cal. 754 [130 Pac. 872]; *Estate of Clark,* 170 Cal. 418 [149 Pac. 828]; *Estate of Purcell,* 164 Cal. 300 [128 Pac. 932]; *Estate of Stoddart,* 174 Cal. 606 [163 Pac. 1010]; *Estate of Ricks,* 160 Cal. 460 [117 Pac. 532]; *Estate of Nelson,* 132 Cal. 193 [64 Pac. 294]; *Estate of Morcel,* 162 Cal. 188 [121 Pac. 733].) **[18]** Contestants, in reply, invoke the rule that ''where one who unduly profits by the will as a beneficiary thereunder sustains a confidential relation to the testator, and has actually participated in procuring the execution of the will, the burden is on him to show that the will was not induced by coercion or fraud.'' (*Estate of Baird,* 176 Cal. 381, 384 [168 Pac. 561]; *Estate of Nutt,* 181 Cal. 522, 528 [185 Pac. 393]), and that ''a presumption of undue influence arises from proof of the existence of a confidential relation between the testator and such a beneficiary, coupled with activity on the part of the latter in the preparation of the will.'' (*Estate of Higgins,* 156 Cal. 261 [104 Pac. 6].) The rule is well recognized, but is not applicable to the facts herein. Miss Blackwell, the beneficiary, not only was not shown to have been active in the preparation of the will, but was not shown to have participated in any way in procuring its execution. She testified that she did not even know that the

testator had executed a will until some weeks after his death. Conceding that because of her interest in the case the jury might have disbelieved this testimony, there is no evidence in the case that she did in fact have any earlier knowledge that a will had been or was to be executed. Marconi, who was active in the preparation of the will and participated in procuring its execution, was not a beneficiary thereunder and did not sustain a confidential relation to the testator. Neither is there any evidence that he was in any sense an agent of Miss Blackwell or that there was any concert of purpose or concert of action between them. The single circumstance that he was her half-brother, standing alone, is of no importance.

We are satisfied, not only that the action of the trial court in granting the motion for an instructed verdict was correct, but that it would have been error to deny the motion.

[19] But one more assignment of error need be considered herein. Marconi had testified that according to his best recollection the proposed will was drafted by the attorney on the afternoon of December 16th, and he testified positively that it was not executed until noon of the day following the day upon which it had been drafted. Contestants called as a witness the attorney who had prepared the will, and sought to show by him that it had not been drafted until the afternoon of December 17, from which the conclusion would follow that it was not executed until noon of the 18th. The trial court excluded this evidence, and its action in so doing was clearly erroneous. Contestants were entitled to prove, if they could do so by competent evidence, the precise date and hour when the will was executed. This was a fact which was material and relevant to each of the issues upon the contest. But we are unable to see that contestants were injured in the least by this ruling. The evidence is to the effect that the mental and physical condition of the testator was substantially the same on the 18th as on the 17th. There is, in fact, no evidence of any change in these respects on those two dates. Therefore, if we assume that the contestants would, in fact, have proved that the will was executed on the 18th instead

of the 17th, such proof would have added nothing whatever to the case in support of their allegations upon the contest. The judgment is affirmed.

Kerrigan, J., Lawlor, J., Seawell, J., Wilbur, C. J., and Lennon, J., concurred.